**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Ronald A. ERICKSON, Defendant–
Appellee.**

**No. 92–30107.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1992.

Decided April 12, 1993.

Sean Connelly, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Michael Filipovic, Asst. Federal Public Defender, Seattle, WA, for defendant-appellee.

Before: WALLACE, Chief Judge, SKOPIL, and LEAVY, Circuit Judges.

WALLACE, Chief Judge:

The government appeals from the district court's order granting Erickson's pretrial motion to suppress evidence seized pursuant to a search of his residence. The sole issue on appeal is whether the probable cause and warrant requirement of the Fourth Amendment apply when a police officer pulls back a plastic sheet covering a window and looks inside a basement during a burglary investigation. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3731. We affirm.

## I

On the afternoon of December 13, 1990, Officer Justice of the Tacoma Police Department was dispatched to investigate a suspected burglary at 4012 North Orchard in Tacoma. Upon arrival, he and another officer conducted a perimeter search of the premises. The officers found no signs of forced entry. Officer Justice then spoke with two neighbors who told him they had seen two men dragging a large brown plastic bag which appeared to be full of heavy items across the backyard of 4018 North Orchard, the residence adjacent to 4012 North Orchard. The neighbors reported that the men left the bag to retrieve a car, then picked up the bag and drove away. From this conversation, Officer Justice erroneously concluded that the events described by the neighbors had occurred about a half-hour before he arrived. In fact, these events had occurred over an hour earlier.

Officer Justice walked into the backyard of 4018 North Orchard to investigate. While standing in the backyard, he looked into the house through a sliding glass door. The door and the rest of the residence seemed secure and no one appeared to be home. Officer Justice did not knock on the back door. Continuing his investigation, he came upon an open basement window. A fan occupied part of the open window, but enough space remained for someone to have gained entry. A black plastic sheet covered the open window.

Although Officer Justice did not see any signs of forced entry, he pulled back the plastic from the open window and looked inside the basement. Officer Justice testified that he did so in order to determine whether this residence had been burglarized. He saw numerous marijuana plants and smelled marijuana. Officer Justice immediately stopped looking in the window and contacted a supervisor to prepare an application for a search warrant. The police executed the warrant the same day and seized marijuana plants, cultivation equipment, and documentary evidence. The police also determined that the residence at 4018 North Orchard had in fact been burglarized and that numerous marijuana plants had been taken.

In a superseding indictment, the government charged Erickson with one count of conspiring to manufacture, distribute, and possess marijuana, three counts of possessing marijuana with intent to distribute, and three counts of financial structuring, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 1956(a)(1)(B)(i). Erickson moved to suppress the evidence obtained from his residence, arguing that Officer Justice's initial search violated the Fourth Amendment. In a written order clarifying an earlier oral decision, the district court concluded that exigent circumstances did not justify Officer Justice's warrantless search of Erickson's residence, and therefore granted the motion to suppress.

## II

■ We review de novo the lawfulness of a search. *United States v. Chen*, 979 F.2d 714, 716 (9th Cir.1992).

■ It is common ground that the search pursuant to the warrant was impermissible unless the initial viewing was valid. *Nardone v. United States*, 308 U.S. 338, 341, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939). In addition, the government does not dispute the district court's finding that exigent circumstances did not exist. Rather,

the government contends that the district court erred in applying its Fourth Amendment analysis. According to the government, Officer Justice was performing one of his "community caretaking functions" when he pulled back the plastic sheet and looked inside Erickson's basement. The government asserts that such a caretaking search, undertaken to protect the residents of 4018 North Orchard rather than make a criminal case against them, is permissible without a warrant or probable cause as long as the officer acted reasonably under the circumstances. The government contends that Officer Justice reasonably discharged his community caretaking responsibilities and that the district court thus erred in suppressing the evidence obtained from the warrantless search of Erickson's residence.

The Supreme Court used the phrase "community caretaking functions" in *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (*Cady*). Cady, an off-duty Chicago policeman, became intoxicated and ran his car off the road near Kewaskum, Wisconsin. After towing the disabled car and leaving it outside a nearby garage, Kewaskum police officers arrested Cady for drunk driving. Based on the impression that Chicago police officers must carry their service revolvers with them at all times and pursuant to standard departmental procedures, one of the arresting officers searched Cady's car for the gun. The officer did not obtain a search warrant. During the search, the officer discovered evidence linking Cady to a recent homicide. Cady appealed his eventual conviction for first-degree murder and argued that the automobile search violated the Fourth Amendment. The Supreme Court recognized that, by necessity, local police officers often must "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441, 93 S.Ct. at 2528. The Court held that the search of Cady's car was incident to the caretaking function of the local police to protect "the safety of the general public

who might be endangered if an intruder removed a revolver from the trunk of the vehicle." *Id.* at 447, 93 S.Ct. at 2531. Because the police had reasonably believed that Cady's car contained a gun, the Court upheld the warrantless search of Cady's car. *Id.* at 447–48, 93 S.Ct. at 2531. The seizure of the incriminating evidence found during the search was therefore valid.

It cannot be gainsaid that the societal role played by local police officers extends well beyond their criminal enforcement activities. "[I]n addition to being an enforcer of the criminal law," a police officer "is a 'jack-of-all-emergencies.'" *United States v. Rodriguez–Morales*, 929 F.2d 780, 784 (1st Cir.1991), *quoting* W. LaFave, *Search and Seizure* § 5.4(c), at 525 (2d ed. 1987), *cert. denied,* —— U.S. ——, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). He is "expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety." *Id.* at 784–85. Investigating reports of burglaries undoubtedly qualifies as one of these community caretaking functions.

■ The fact that a police officer is performing a community caretaking function, however, cannot itself justify a warrantless search of a private residence. In determining whether a search is reasonable within the meaning of the Fourth Amendment, the governmental interest motivating the search must be balanced against the intrusion on the individual's Fourth Amendment interests. *Maryland v. Buie*, 494 U.S. 325, 331, 110 S.Ct. 1093, 1097, 108 L.Ed.2d 276 (1990). "Under this test, a search of the house or office is generally not reasonable without a warrant issued on probable cause." *Id.*

■ The government argues that the warrant requirement should not apply here because Officer Justice was not trying to make a criminal case against Erickson. But the Court has long rejected such a cramped view of the Fourth Amendment. The right to be free from unreasonable searches and seizures does not extend only

to those who are suspected of criminal behavior. *See Camara v. Municipal Court,* 387 U.S. 523, 530, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 (1967). On the contrary, "even the most law-abiding citizen has a very tangible interest in limiting the circumstances under which the sanctity of his home may be broken by official authority." *Id.* at 530–31, 87 S.Ct. at 1732. The warrantless search of Erickson's residence was not justified by any of the established exceptions to the warrant requirement, such as consent or exigent circumstances. Thus, it was "presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980).

The cases relied on by the government do not cause us to view this case otherwise. Although it involved a community caretaking function, *Cady* clearly turned on the "'constitutional difference'" between searching a house and searching an automobile. 413 U.S. at 439, 93 S.Ct. at 2527, *quoting Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970). Because of the pervasive regulation of motor vehicles, which often calls on law enforcement officials to stop and examine cars, and because of the frequency with which cars break down or become involved in accidents on public roads, "the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office." *Id.* at 441, 93 S.Ct. at 2528. As a result of this frequent contact, "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *Cady,* 413 U.S. at 439, 442, 93 S.Ct. at 2527, 2528. In upholding the search of Cady's automobile, the Court expressly relied on its "previous recognition of the distinction between motor vehicles and dwelling places." 413 U.S. at 447–48, 93 S.Ct. at 2531. We agree with the conclusion of the Seventh Circuit that the Court in *Cady* "intended to confine the holding to the automobile exception and to foreclose an expansive construction of the decision allowing warrantless searches of private homes or businesses." *United States v. Pichany,* 687 F.2d 204, 209 (7th Cir.1982) (refusing to extend community caretaking exception to warrantless search of warehouse).

The government can point to only one case that discussed the police's community caretaking functions in a context other than a search of an automobile. *See United States v. Singer,* 687 F.2d 1135 (8th Cir.1982) (*Singer*), *adopted in relevant part,* 710 F.2d 431 (8th Cir.1983) (en banc). In that case, the Eighth Circuit properly pointed out that a police officer's community caretaking functions "include responding to notice of what appeared to be a burglary in progress." *Id.* at 1144. The court, however, expressly held that exigent circumstances justified the warrantless entry at issue. *Id.* Because exigent circumstances did not exist in this case, *Singer* is of no help to the government.

The warrantless search of a private residence strikes at the heart of the Fourth Amendment's protections. "The right of officers to thrust themselves into a home is ... a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). The government here contends that community safety demands that a police officer, without a warrant or probable cause, and in the absence of exigent circumstances, be allowed to conduct a search of a private home to determine if a crime has occurred. However, "[i]t is precisely this kind of judgmental assessment of the reasonableness and scope of a proposed search that the Fourth Amendment requires be made by a neutral and objective magistrate, not a police officer." *Mincey v. Arizona,* 437 U.S. 385, 395, 98 S.Ct. 2408, 2414–2415, 57 L.Ed.2d 290 (1978).

Quite unlike the automobile search performed in *Cady,* the warrantless search of Erickson's home constituted a severe invasion of privacy. The fact that Officer Justice may have been performing a community caretaking function at the time cannot alone justify this intrusion.

Of course, to say that a police officer may not conduct a warrantless search of a residence merely because he is performing a community caretaking function does not mean that such a search may never be made. In a wide variety of contexts, this and other circuits have upheld warrantless searches conducted during burglary investigations under the rubric of exigent circumstances. In *United States v. Valles–Valencia,* 811 F.2d 1232 (9th Cir.), *amended,* 823 F.2d 381 (9th Cir.1987), for example, the police responded to a report that strangers were parked in front of a nearby house, the owners of which were on vacation. The strangers who were questioned by the police could not adequately explain their presence and a front window showed signs of being pried open. The police also smelled marijuana. Suspecting that a burglary was in progress, the police entered the house. They discovered a cache of controlled substances. We concluded that "[t]he circumstances known to the officers" suggested that a burglary was in progress and "supported probable cause to enter the building to learn what was happening." *Id.* at 1236. Because exigent circumstances justified the initial warrantless entry into the house, we upheld the search. *Id.; see also United States v. Dart,* 747 F.2d 263, 267 (4th Cir.1984) (upholding initial warrantless search of warehouse where locks sawed off and door forced open); *Singer,* 687 F.2d at 1144 (upholding warrantless entry of residence where circumstances indicated burglary in progress); *United States v. Estese,* 479 F.2d 1273, 1274 (6th Cir.1973) (upholding warrantless search where police observed signs that apartment door had been pried open).

The important responsibility of the police to investigate reported burglaries must be balanced against the serious invasions of privacy such searches entail. As the above cases demonstrate, the exigent circumstances exception to the warrant requirement adequately accommodates these competing interests. The government does not

challenge on appeal the district court's finding that exigent circumstances did not exist in this case. We therefore do not pass upon that ruling.

AFFIRMED.