USCA1 Opinion

 

 January 23, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2221 UNITED STATES OF AMERICA, Appellee, v. WILLIAM R. TIBOLT, Defendant, Appellant.  ____________________ ERRATA SHEET The opinion of this Court issued on December 29, 1995, is amended as follows: Page 10, line 6, should read: ". . . at the Tibolt residence."  UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-2221 UNITED STATES OF AMERICA, Appellee, v. WILLIAM R. TIBOLT, Defendant, Appellant.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________  ____________________ Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Anthony M. Cardinale, with whom Nicholas J. DiMauro and Law _____________________ _____________________ ___ Offices of Anthony M. Cardinale were on brief for appellant. _______________________________ William C. Brown, Attorney, Appellate Division, Department of _________________ Justice, with whom Donald K. Stern, United States Attorney, was on ________________ brief for appellee.  ____________________ December 29, 1995 2  ____________________ 3 CYR, Circuit Judge. Following his conviction on a CYR, Circuit Judge. _____________ money laundering charge, 18 U.S.C. 1956, in the United States District Court for the District of Massachusetts, William Tibolt appeals two trial court rulings relating to incriminating finan- cial records seized from his residence in a warrantless search. Finding no error, we affirm.  I I BACKGROUND BACKGROUND __________ Around mid-morning on July 27, 1992, a security alarm activated in the Dombrowski residence located at 13 Old Salem Path in Gloucester, Massachusetts. As the security alarm company JK Security was unable to make telephone contact with the Dombrowski residence to determine whether the alarm had been set off accidentally, it telephoned the Gloucester Police to report the alarm. Officer Joseph Palazzola was dispatched to investi- gate the alarm report at the Dombrowski residence, which is next door to the Tibolt residence at 11 Old Salem Path.  Both residences are set well back from Old Salem Path and largely concealed from view. Two driveways separated by a tree and some shrubbery lead to the Tibolt home. The Tibolt mailbox bearing "11 Old Salem Path" is located immediately to the right of the first Tibolt driveway. The Dombrowski mailbox marked "dombrowski 13" is located a few feet left of the second Tibolt driveway, more than 60 feet before the ____ ____ __ ____ ______ driveway entrance to the Dombrowski residence at 13 Old Salem Path.  2 Upon observing the mailbox marked "13," Officer Palaz- zola mistakenly entered the second driveway to the Tibolt resi- dence. He checked the exterior of the residence for signs of an attempted break, or burglary in progress. Although he noted no signs of forced entry, Palazzola found an unlocked door on the rear deck. He opened the door and called inside to alert any occupant, but received no response. Given that the police had been requested to investigate the alarm, that a door was un- locked, and that Palazzola had been unable to make contact with anyone inside the house, he reasoned that the alarm might not have been activated accidentally. Palazzola promptly called for backup, and Officer Thomas Williams arrived within five minutes. Williams likewise drove to the Tibolt residence rather than the Dombrowski resi- dence, because he saw Palazzola's squad car parked next to the Tibolt residence. Williams immediately recognized the Tibolt residence as having been the target of a prior investigation by a Gloucester Police drug task force in which he had participated.  Williams was unsure, however, whether the target (viz., Tibolt) of the task force investigation still owned the residence, or whether it was still under investigation for drug-related activi- ties.  Palazzola and Williams decided to make an immediate warrantless entry through the unlocked rear door, then looked about for possible explanations for the alarm (e.g., any occu- pants, a burglar, "whatever"). Their search was limited in 3 scope, eschewing drawers, cabinets and containers. The officers "secured" each room, to rule out the presence of intruders, captives, or injured occupants. After sweep-searching the upper floors, the officers discovered a well-established marijuana growing facility in the basement, then left to obtain a search warrant.1 Later, armed with a warrant, the officers searched the Tibolt premises and seized incriminating financial records which Tibolt subsequently sought to suppress on the ground that the search warrant was invalid because the evidence relied on in the supporting affidavit was itself the fruit of the earlier warrantless search. After hearing, the district court denied the motion to suppress, without elaboration.  Following the verdict, Tibolt moved for a new trial on the ground that he had uncovered "new" evidence relating to the suppression motion which would (1) impeach Palazzola's suppres- sion hearing testimony, (2) suggest that the Gloucester Police deliberately planned to search the Tibolt residence, and (3) demonstrate a Franks v. Delaware, 438 U.S. 154, 155-56 (1978), ______ ________ violation. Gloucester Police Department "incident cards," which record the time, date, desk officer, and location of police assignments, disclosed that officers had been called to Old Salem Path on at least fourteen prior occasions to investigate security  ____________________ 1The warrant application related the following grounds: (1) an intrusion alarm was reported by J.K. Systems to the Gloucester Police Department; (2) Officers Palazzola and Williams responded to the alarm report and found a door open; (3) the officers entered the home to check the premises for intruders; and (4) a marijuana-growing facility was found in the cellar.  4 alarms. The cards reflect that there were three calls to "13 Old Salem Path" and ten others to "Old Salem Path." One card, dating from 1990, indicates that Officer Joseph Palazzola had been sent to the Dombrowski residence to investigate a security alarm. And two cards indicate that a desk officer with the initials "J.P." had dispatched other officers to "Old Salem Path." I n addition, an affidavit by Officer Theodore Lemieux, dated January 27, 1994 the day after the Tibolt suppression hearing and _ ___ ___ _____ ___ ______ ___________ _______ submitted in support of a search warrant application in an unrelated criminal proceeding, stated that  _________ an informant . . . has provided information __ _________ ___ ________ ___________ that led to the arrest and indictment of one ____ ___ __ ___ ______ ___ __________ __ ___ William Tibolt. In the investigation the _______ ______ informant provided detailed information in regard to the location of an indoor growing operation that Mr. Tibolt had in his home. The informant provided the name, address as well as other persons that were involved in the marijuana growing operation. The infor- mants [sic] also described the home and the interior as well as a room in the center of the basement that [sic] the growing operation was being conducted. (Emphasis added.)  But for the fact that it contains no indication as to the timing of the events described in it, the Lemieux affidavit might conflict with the affidavit submitted in support of the search warrant application of July 27, 1992, see supra note 1, which ___ _____ described JK Security's call to the Gloucester Police Department, the police response, and the officers' unexpected discovery of __________ marijuana in the Tibolt basement. After hearing, the district court denied the motion for new trial. United States v. Tibolt, _____________ ______ 868 F. Supp. 380, 381-83 (D. Mass. 1994). 5 II II DISCUSSION DISCUSSION __________ A. Motion to Suppress A. Motion to Suppress __________________ Tibolt first challenges the district court's pretrial ________ denial of the motion to suppress the primary evidence of money laundering: the financial records seized from his residence on July 27, 1992. He contends that there was no objectively reason- able basis for believing that a life-threatening burglary was in progress, even assuming that Officer Palazzola reasonably had mistaken the Tibolt residence for the Dombrowski residence. But ___ see infra Section II.B. And he argues that inspection of the ___ _____ exterior of the Tibolt residence revealed no signs of forcible entry, and no open windows or doors. See Brief for Appellant at ___ 27-29 (citing United States v. Erickson, 991 F.2d 529 (9th Cir. _____________ ________ 1993) (suppressing evidence seized in warrantless search of residence where officers investigating burglar alarm observed no indication of forced entry)). 1. Substantive Law 1. Substantive Law _______________ A warrantless search of a private residence is presump- tively unreasonable under the Fourth Amendment. See Payton v. ___ ______ New York, 445 U.S. 573, 586 (1980). The government therefore ________ must prove that the initial search came within some recognized exception to the Fourth Amendment warrant requirement. See ___ United States v. Doward, 41 F.3d 789, 791 (1st Cir. 1994), cert. _____________ ______ _____ denied, 115 S. Ct. 1716 (1995). Generally speaking, absent ______ probable cause and exigent circumstances the Fourth Amendment 6 bars warrantless, nonconsensual entries of private residences. See United States v. Curzi, 867 F.2d 36, 41 (1st Cir. 1989).2  ___ _____________ _____ Probable cause will be found to have been present if the officers at the scene collectively possessed reasonably trustworthy information sufficient to warrant a prudent policeman in believing that a criminal offense had been or was being committed. See Hegarty v. Somerset Cty., 53 F.3d 1367, 1374 (1st ___ _______ _____________ Cir. 1995), cert. denied, No. 95-629, 1995 WL 625553 (U.S. Dec. _____ ______ 11, 1995); United States v. Zurosky, 614 F.2d 779, 784 n.2 (1st _____________ _______ Cir. 1979) (finding probable cause where police investigated possible "breaking and entering" at warehouse), cert. denied, 446 _____ ______ U.S. 967 (1980) (citing Brinegar v. United States, 338 U.S. 160, ________ _____________ 175-76 (1949)). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231 (1983). ________ _____ Exigent circumstances exist where law enforcement officers confront a "compelling necessity for immediate action  ____________________ 2The government would have us characterize this warrantless entry as a so-called "community caretaker" search, a warrant exception applicable to searches "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 ____ __________ U.S. 433, 441, 447-48 (1973). In light of our alternative disposition, we need not consider the "community caretaker" exception. But see id. at 439 (noting "constitutional differ- ___ ___ ___ ence" between search of home and search of automobile); see also ___ ____ United States v. Bute, 43 F.3d 531, 535 (10th Cir. 1994) (reading _____________ ____ Cady as applying only to searches of automobiles, not homes); ____ Erickson, 991 F.2d at 532 (same); United States v. Pichany, 687 ________ _____________ _______ F.2d 204, 209 (7th Cir. 1982) (same). 7 that w[ould] not brook the delay of obtaining a warrant." United ______ States v. Wilson, 36 F.3d 205, 209 (1st Cir. 1994) (citing United ______ ______ ______ States v. Adams, 621 F.2d 41, 44 (1st Cir. 1980)); United States ______ _____ _____________ v. Almonte, 952 F.2d 20, 22 (1st Cir. 1991), cert. denied, 503 _______ _____ ______ U.S. 1010 (1992). Although "exigency" determinations invariably are fact-intensive, see United States v. Donlin, 982 F.2d 31, 34 ___ _____________ ______ (1st Cir. 1992), "exigent circumstances" commonly include: "(1) `hot pursuit' of a fleeing felon; (2) threatened destruction of evidence inside a residence before a warrant can be obtained; (3) a risk that the suspect may escape from the residence unde- tected; or (4) a threat, posed by a suspect, to the lives or safety of the public, the police officers, or to [an occupant]." Hegarty, 53 F.3d at 1374. The "exigent circumstances" inquiry is _______ limited to the objective facts reasonably known to, or discover- able by, the officers at the time of the search. See Illinois v. ___ ________ Rodriguez, 497 U.S. 177, 186 (1990) (upholding warrantless search _________ where police officers reasonably, but mistakenly, believed they had obtained valid "third-party consent" to search residence from person with authority to consent) (citing Archibald v. Mosel, 677 _________ _____ F.2d 5 (1st Cir. 1982) (invoking "good faith" principle under "exigent circumstances" exception)). 2. Standard of Review 2. Standard of Review __________________ As mixed questions of law and fact, the "probable cause" and "exigent circumstances" determinations require bifur- cated review: whether a particular set of circumstances gave rise to "probable cause" or "exigent circumstances" is reviewed 8 de novo and findings of fact are reviewed for clear error. __ ____ United States v. Goldman, 41 F.3d 785, 786 (1st Cir. 1994) ______________ _______ (probable cause), cert. denied, 115 S. Ct. 1321 (1995); United _____ ______ ______ States v. Gooch, 6 F.3d 673, 678 (9th Cir. 1993) (exigent circum- ______ _____ stances). Where, as here, there are no explicit factual find- ings, the record below is assessed in the light most favorable to the trial court ruling. See United States v. Baldacchino, 762 ___ _____________ ___________ F.2d 170, 176 (1st Cir. 1985).  3. Application of Law 3. Application of Law __________________ Tibolt does not challenge the factual findings implicit in the district court ruling, given that the evidence most central to the ruling the police descriptions relating to the alarm report, the locations of the mailboxes, the unlocked door is undisputed.3 Moreover, these implicit findings unques- tionably support the challenged legal conclusion that Officer Palazzola had probable cause to believe a breaking and entering had been or was being committed at the Tibolt residence.   ____________________ 3On appeal, Tibolt asserts no direct challenge to the objective "reasonableness" of Palazzola's putative mistake  _________ purportedly caused by the juxtaposition of the Dombrowski mailbox and the entrance to Tibolt's second driveway in investigating the Tibolt residence, instead of Dombrowski's, for a burglary in progress. Rather, he questions only whether Palazzola, despite his protestations to the contrary, knowingly used this fortuitous circumstance as a pretext for conducting a warrantless search for drugs as part of an ongoing task force investigation targeting the Tibolt residence. The only evidence of such a ruse, however, was presented in his post-conviction motion. See infra Section _______________ ___ _____ II.B. At the pretrial hearing, the inquiry into Palazzola's ________ state of mind necessarily turned, for the most part, on the trial court's observation of Palazzola's demeanor, and its credibility determination, matters uniquely within the province of the trier of fact. United States v. Zapata, 18 F.3d 971, 975 (1st Cir. ______________ ______ 1994).  9 A security alarm had been activated, and when JK Security placed a call to the Dombrowski residence, it had received no answer.4 These circumstances severely undercut any likelihood that the security alarm had been activated inadver- tently by a resident. Moreover, upon his arrival approximately _____________ ten minutes later, Palazzola checked all windows and doors at the ___ _______ _____ Tibolt residence.5 Instead of finding all doors secured, as one  ____________________ 4Tibolt cites cases involving various external indicia of a "break," see, e.g., Commonwealth v. Fiore, 403 N.E.2d 953, 955 ___ ____ ____________ _____ (Mass. Ct. App.) (upholding warrantless search where outer door found broken off hinges), cert. denied, 449 U.S. 938 (1980), but _____ ______ ___ no alarm system activation. See Erickson, 991 F.2d at 530, 533 __ _____ ______ __________ ___ ________ (noting that government, on appeal, had conceded that no "exigent circumstances" had been shown, given the absence of any activated security alarm; no visible sign of forced entry; witness reports that suspected burglars had departed area 30 minutes before police officers' arrival; and officers' failure to "knock and announce" before entry); United States v. Moss, 963 F.2d 673, ______________ ____ 677, 679 (4th Cir. 1992) (invalidating search because "the Government has formally conceded that this is not an 'exi- gent-circumstances case' and does not seek to uphold the search here on that basis," given that police officer observed "no [external] indication that any illegal occupant was inside" the cabin); Commonwealth v. Bates, 548 N.E.2d 889, 892-93 (Mass. Ct. ____________ _____ App. 1990) (invalidating search where police did not even suspect an ongoing crime, but were merely investigating a "missing person" report, after waiting over three hours before investigat- ing missing person's apartment); State v. Morgavi, 794 P.2d 1289, _____ _______ 1292-93 (Wash. Ct. App. 1990) (invalidating search based on police observation of "a car in front of the garage, opened and partially broken doors to the garage, an open back door to the house and an open side door to the garage," but distinguishing cases where "the police were summoned to the premises by con- cerned neighbors who had witnessed the burglaries and the flight of suspects"). We think it clear that the activation of an alarm system is an external "sign" of a possible forced entry. 5Although the Dombrowski residence bore a "JK Security" sticker, and the Tibolt residence an "ADT Security" sticker, there was no evidence that Palazzola had been informed by the dispatcher that JK Security had reported the alarm. Further, while dispatchers sometimes write the name of the reporting security company on the incident cards, see infra Section II.B., ___ _____ the investigating officers do not receive these cards for comple- 10 might reasonably expect while the residents are away, he found an unlocked door on the rear deck and received no response to his efforts to communicate with anyone who might be inside. These circumstances significantly enhanced the likelihood of an intrud- er. For similar reasons, we conclude that Palazzola was presented with "exigent circumstances" permitting an immediate _________ warrantless entry. Without entering, he could not know but what an intruder had managed to get into the residence, and even injured or captured a resident, then fled; or had been caught off guard by the police and remained in the residence with a forcibly detained resident. Even the authorities cited by Tibolt acknowl- edge the potential exigencies attending such circumstances. See ___ Erickson, 991 F.2d at 533 ("In a wide variety of contexts, this ________ and other circuits have upheld warrantless searches conducted during burglary investigations under the rubric of exigent circumstances."); Commonwealth v. Fiore, 403 N.E.2d 953, 955 ____________ _____ (Mass. Ct. App.) ("It seems clear to us that a house break without more as set out in the affidavit raises the possibility of danger to an occupant and of the continued presence of an intruder and indicates the need to secure the premises. In such circumstances `(t)he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace  ____________________ tion until after their investigation of the alarm report. In any _____ event, Tibolt has not raised this matter. See supra note 3. ___ _____ 11 officers.'") (citation omitted), cert. denied, 449 U.S. 938 _____ ______ (1980)). Hindsight discloses, of course, that Palazzola was mistaken. Nevertheless, at the time, see Rodriguez, 497 U.S. at __ ___ ____ ___ _________ 186, an officer confronted with these circumstances reasonably could have concluded that there was an imminent risk "to the lives or safety of the public," Hegarty, 53 F.3d at 1374, or to _______ an injured or immobilized resident. See, e.g., Murdock v. Stout, ___ ____ _______ _____ 54 F.3d 1437, 1443 (9th Cir. 1995) (upholding warrantless search of residence following burglary report, where investigating officers found some signs that resident might have been at home when an intruder entered dwelling, and received no response to their calls, thereby creating a "fair probability that . . . a resident might be in need of assistance") (distinguishing prior circuit precedent in United States v. Erickson, 991 F.2d 529 (9th _____________ ________ Cir. 1993)). Accordingly, the district court did not err in denying the motion to suppress. B. Motion for New Trial B. Motion for New Trial ____________________ We turn now to the district court ruling denying a new trial. Tibolt contends that the "newly discovered" Gloucester Police "incident cards" and the Lemieux affidavit support a rational inference that Officer Palazzola committed perjury at the suppression hearing, in explaining that the misleading placement of the Dombrowski mailbox at the opening of the second Tibolt driveway, and his own unfamiliarity with the two residenc- es, had caused him to go to the Tibolt residence to investigate the reported alarm at the Dombrowski residence. Tibolt maintains 12 that the incident cards show that Palazzola had been to the Dombrowski residence at least once before and, therefore, should have recognized his mistake on this occasion. Further, he argues, the Lemieux affidavit suggests that Palazzola's "mistake" was actually part of an elaborate, conspiratorial ruse, manufac- tured by the Gloucester Police task force to enable a warrantless search of the Tibolt residence for drugs. Cf. Curzi, 867 F.2d at ___ _____ 43 n. 6 (noting that police may not justify warrantless search by manipulating events to generate "exigency"). Finally, in the affidavit supporting the search warrant application submitted on July 27, 1992 presumably premised solely on the fruits of the ______ warrantless search the police failed to disclose their prior investigations of the Tibolt residence for suspected drug activi- ties. Tibolt insists that the failure to disclose the prior investigations of the residence constituted a "clear violation" of Franks v. Delaware, 438 U.S. 154 (1978).  ______ ________ 1. Substantive Law  1. Substantive Law _______________ A motion for new trial based on newly discovered evidence will not be allowed unless the movant establishes that the evidence was: (i) unknown or unavailable at the time of trial, (ii) despite due diligence, (iii) material, and (iv) likely to result in an acquittal upon retrial. United States v. _____________ Ortiz, 23 F.3d 21, 27 (1st Cir. 1994); United States v. Natanel, _____ _____________ _______ 938 F.2d 302, 313 (1st Cir. 1991), cert. denied, 502 U.S. 1079 _____ ______ (1992). If, however, the "new" evidence was within the govern- 13 ment's control and its disclosure was withheld, the third and fourth criteria are less stringent: The usual locution, taken from Justice Blackmun's opinion in Bagley, [473 U.S. 667 ______ (1985)], is that the nondisclosure justifies a new trial if it is "material," it is "material" only if there is "a reasonable probability" that the evidence would have changed the result, and a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at ___ 682. . . . This somewhat delphic "undermine confidence" formula suggests that [a] rever- sal [and a remand for new trial] might be warranted in some cases even if there is less than an even chance that the evidence would produce an acquittal. After all, if the evidence is close and the penalty signifi- cant, one might think that undisclosed evi- dence creating (for example) a 33 percent chance of a different result would undermine one's confidence in the result. And while Bagley appears to give little weight to other ______ factors--such as the degree of fault on the prosecutor's part and the specificity of the defense request--it is not entirely clear that these variables must be ignored. United States v. Sepulveda, 15 F.3d 1216, 1220 (1st Cir. 1993), _____________ _________ cert. denied, 114 S. Ct. 2714 (1994).  _____ ______ 2. Standard of Review 2. Standard of Review __________________ The denial of a motion for new trial is reviewed only for manifest abuse of discretion. See United States v. Wright, ___ _____________ ______ 625 F.2d 1017, 1019 (1st Cir. 1980). The instant motion for new trial triggers a two-tier inquiry. First, to the extent the "new" evidence pertains to the disposition of the pretrial motion to suppress financial records, wherein the district court was the ________ _____ trier of fact, Tibolt confronts the daunting task of demonstrat- ing that the district court committed clear error in determining 14 that the "new" evidence would not have altered its pretrial factual findings. Zapata, 18 F.3d at 975 (noting that factual ______ findings and credibility determinations relating to suppression issues are normally for the trier of fact). Second, Tibolt must show that the "new" evidence would so undermine the government's case as to give rise to a "reasonable" probability of acquittal upon retrial. Sepulveda, 15 F.3d at 1220.6  _________ 3. The Incident Cards 3. The Incident Cards __________________ We cannot say that the district court ruling constitut- ed a manifest abuse of discretion. The district court found, inter alia, that the police incident reports would not suffice to _____ ____ undermine Officer Palazzola's credibility; hence, were not likely to result in an acquittal. Tibolt, 868 F. Supp. at 382. Nor are ______ we persuaded that Palazzola perjured himself at the suppression hearing. Rather, he testified simply that he could not remember having been at the Dombrowski residence prior to July 27, 1992. In fact, the incident cards show that he was sent there on but one occasion three years before the pretrial suppression ___ _____ _____ hearing. Further, this incident card did not even compel the conclusion that Palazzola went to, or secured, the Dombrowski residence on that prior occasion. Thus, the district court was ____ _____ ________ entitled to find that the incident cards did not undermine Palazzola's claimed lack of memory. Cf. Natanel, 938 F.2d at 313 ___ _______  ____________________ 6We assume, without deciding, that the "new" evidence was within the government's control and potentially subject to disclosure. But see infra Section II.B.4 (noting that government ___ ___ _____ did disclose essential information, later reiterated in Lemieux affidavit, at pretrial suppression hearing).  15 (noting somewhat lesser burden on new-trial movant where evidence shows witness's prior testimony was "deliberately false"). Given their marginal direct probative value, we cannot say that the incident cards alone were sufficient to generate a "reasonable" probability that Tibolt would be acquitted upon retrial. Cf. __ Sepulveda, 15 F.3d at 1220 n.5 (noting that newly discovered _________ evidence pertaining exclusively to a government witness's credi- bility rarely warrants new trial). 4. The Lemieux Affida- 4. The Lemieux Affida- ____________________ vit vit ___ The district court found the Lemieux affidavit similar- ly inconclusive. Although the affidavit might contribute to a plausible inference of police conspiracy, it certainly did not compel such a finding, especially since its temporal relevance is ______ so unclear. For one thing, it is not unreasonable to think that Lemieux may have been imprecise in recollecting the sequence of ________ the events which had occurred a year and a half earlier. That is to say, there is nothing in the affidavit to suggest but what Lemieux may have been remembering that Tibolt was arrested and that an informant's tip simply corroborated what the officers ____________ themselves accidentally discovered. Nor does the Lemieux affida- vit, vague as it is, make it probable that an acquittal would result upon retrial.  In all events, we need not rest our decision solely on the "credibility" ground, since the district court found also  with respect to the information in the Lemieux affidavit that Tibolt had not met the first two prongs of the Ortiz test. See _____ ___ 16 Natanel, 938 F.2d at 313 (failure to establish any of the four _______ ___ Ortiz factors defeats motion for new trial). The court further _____ found that Tibolt had not shown that this "new" evidence was either unknown or unavailable at the time of the pretrial sup- pression hearing, nor that Tibolt had exercised due diligence to discover the evidence earlier. See Tibolt, 868 F. Supp. at 382 ___ ______ ("What is more, the government proffered at the suppression hearing the fact that Tibolt's home had been the subject of a local drug investigation before the search, and made available to Tibolt one of the officers involved in that investigation for questioning."). At the pretrial suppression hearing, moreover, the government disclosed to the defense that Officer Williams participated in a previous task force surveillance of the Tibolt residence, and that "at that time there were some reports of ____ _______ possible drug activities involving that house." (Emphasis added.) This disclosure certainly should have alerted Tibolt to the probability that an informant was involved. Yet Tibolt failed to pursue information relating to whether the warrantless search of July 27, 1992 was a mere "ruse" designed to fabricate a showing of probable cause. Since the finding that Tibolt failed to exercise due diligence was not clearly erroneous, see Zapata, ___ ______ 18 F.2d at 975, he may not rely on this evidence to mount a renewed attackonthewarrantlesssearchorthesearchwarrantapplication.7  ____________________ 7As noted above, see supra p. 4, Tibolt not only challenges ___ _____ the pretrial determination that Palazzola's warrantless search ___________ ______ was valid, but cites Franks v. Delaware as authority for a direct ______ ________ challenge to the subsequent search warrant, which was premised ______ _______ entirely on the fruits of the earlier warrantless search. A 17 The district court judgment is affirmed. The district court judgment is affirmed. _______________________________________  ____________________ defendant is not entitled to a Franks evidentiary hearing, ______ however, absent a "substantial preliminary showing (1) that a false statement [or material omission] in the affidavit [support- ing the search warrant application] has been made knowingly and intentionally, and (2) that the false statement [or material omission] is necessary for a finding of probable cause." United ______ States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993) (citing ______ ______ ______ United States v. Rumney, 867 F.2d 714, 720 (1st Cir.), cert. ______________ ______ _____ denied, 491 U.S. 908 (1989)).  ______ We discern no principled basis for treating the Franks claim ______ differently than Tibolt's direct challenge to the warrantless search. To the extent the "new" evidence underlying the Franks ______ hearing request was available prior to trial (i.e., the Lemieux affidavit) by the exercise of due diligence, Tibolt's post-trial Franks request based on that evidence is untimely. See supra ______ ___ _____ Section II.B.4. The marginal probative value of the incident cards in undercutting Palazzola's pretrial testimony is insuffi- cient, by itself, to support a "substantial preliminary showing" ___________ that the evidence, if disclosed, would have altered the decision that there was probable cause to issue a search warrant. See ___ supra Section II.B.3; see also, e.g., United States v. Hiveley, _____ ___ ____ ____ _____________ _______ 61 F.3d 1358, 1360 (8th Cir. 1995) (noting that "the 'substantial showing' requirement needed to obtain a Franks hearing is not ______ lightly met").  18